IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DOROTHY J. WHITE** and
**JOHN W. WHITE,**

        **Plaintiffs,**

**v.**                  **//    CIVIL ACTION NO. 5:16CV38**
                                    **(Judge Keeley)**

**MACY'S CORPORATE SERVICES, INC.,** and
**DEPARTMENT STORES NATIONAL BANK,**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER GRANTING
## PLAINTIFFS' MOTION TO REMAND [DKT. NO. 7]

Pending before the Court is the plaintiffs' motion to remand (dkt. no. 7), which asserts that the Court does not have jurisdiction because the amount in controversy does not exceed $75,000 as required under 28 U.S.C. § 1332(a). For the reasons that follow, the Court **GRANTS** the motion and **REMANDS** this case to the Circuit Court of Hancock County, West Virginia.

### I. BACKGROUND

Dorothy J. White ("Mrs. White") maintained a credit card and account with the defendants, Macy's Corporate Services, Inc. ("Macy's") and Department Stores National Bank ("DSNB"). Her May 27, 2015 credit card statement reflected a $2,393.62 account balance.

Mrs. White refinanced her home through Vantage Point Title, Inc. ("Vantage Point"), so that she could pay off her then existing debts and bills, including her Macy's credit card debt. On June 1,

2015, Vantage Point prepared a check in the amount of $2,423.45 made payable to Macy's, which Mrs. White took to the Macy's retail store located at the Fort Steuben Mall, Steubenville, Ohio, on June 8, 2015. According to Mrs. White, Macy's accepted the payment and tendered her a receipt reflecting such. The payment appeared in her June 27, 2015 account statement, which then showed an overpaid balance of $12.10.

When Mrs. White's July 27, 2015 account statement arrived, it showed a balance of $54.39, which the Whites paid on August 3, 2015, bringing the account balance to $0.00. Nevertheless, when Mrs. White's August 27, 2015 account statement arrived, it showed a "payment correction" noting that the balance due was $2,423.45. Mrs. White went to the Macy's store at the Beaver Valley Mall Complex in Monaca, Pennsylvania, where she spoke with the Asset Protection Manager for Macy's, who discovered that the defendants had incorrectly handled and accounted for the $2,423.45 payment on June 8, 2015.

Nevertheless, Mrs. White's September 27, 2015 account statement continued to reflect a balance due of $2,423.45, plus interest. When Mrs. White called the defendants on October 13, 2015 to dispute the statement, they informed her that they needed a

cancelled check before they would remove the improper charges from her account. Mrs. White then procured the cancelled check from Vantage Point and took it, together with a copy of the original receipt, to the Macy's Beaver Valley Mall store. The Asset Protection Manager then faxed the documents to the defendants who had requested the information. The parties continued to exchange a monthly volley of account statements reflecting the unpaid balance, and the paperwork requested to clear up the discrepancy, at least through January of 2016, and to no avail.

On February 22, 2016, the Whites filed suit in the Circuit Court of Hancock County, West Virginia, which asserted nine counts:

- Count I: Violation of the W. Va. Consumer Credit and Protection Act
- Count II: Fraud
- Count III: Constructive Fraud
- Count IV: Breach of Contract and the Covenant of Good Faith and Fair Dealing
- Count V: Tort of Outrage
- Count VI: Negligence
- Count VII: Unjust Enrichment
- Count VIII: Joint Venture
- Count IX: Loss of Consortium (asserted by Mr. White only)

The Whites also asserted that the defendants' actions were wilful, wanton, purposeful, intentional, and committed with malice, evil intent, oppression, gross fraud, and with reckless disregard for

the plaintiffs, the law, social responsibility, common decency, and/or civil obligations. They sought damages for:

- Mental Anguish;
- Emotional Distress;
- Physical Injuries;
- Medical bills, costs, and expenses;
- Aggravation, annoyance, and inconvenience;
- Humiliation, embarrassment, grief, frustration, worry, hopelessness;
- Economic injury;
- Loss of monies;
- Attorney's fees and costs; and
- Other foreseeable and/or consequential loss, costs, and expenses.

The defendants removed to this Court on March 28, 2016, citing diversity jurisdiction. Their notice of removal asserted that the plaintiffs were citizens of West Virginia, that Macy's and DSNB were citizens of Ohio and South Dakota respectively, and that the amount in controversy exceeded $75,000 (dkt. no. 1 at 3). On April 12, 2016, the Whites moved to remand (dkt. no. 7), claiming that the $75,000 amount in controversy threshold had not been met.

## II. DISCUSSION

**A. Applicable Law**

Pursuant to 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the

defendants, to the district court of the United States for the district and division embracing the place where such action is pending." District courts have original jurisdiction over civil actions in which the parties are citizens of different states, and where the amount in controversy exceeds $75,000, not including interests and costs. See 28 U.S.C. § 1332(a). Thus, if the requirements of § 1332 are met, a defendant or defendants, may remove the state filed action to federal court.

It is the party seeking removal that bears the burden of establishing the Court's jurisdiction. Heller v. TriEnergy, Inc., 877 F.Supp.2d 414, 423 (N.D.W.Va. July 9, 2012) (citing Maryland Stadium Authority v. Ellerbe Becket Incorporated, 407 F.3d 255, 260 (4th Cir. 2005). Notably, courts should construe removal statutes strictly and, when in doubt, remand is required. Id. (citation omitted). Indeed, there is a strong presumption that the amount in controversy has not been met. Scaralto v. Ferrell, 826 F.Supp.2d 960, 964 (S.D.W.Va. Nov. 29, 2011) (citing St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 290 (1938)).

As to the amount in controversy component, the ad damnum clause of many complaints often circumvents any argument about whether the $75,000 threshold is met. See Heller, 877

5

F.Supp.2d at 427 (citations omitted). When the <u>ad damnum</u> clause is silent as to the amount of damages sought, however, courts require the removing defendant to establish by a preponderance of the evidence that the amount in controversy has been met. <u>Id.</u> (collecting cases).

When determining the amount in controversy, courts should "'consider[] the judgment that would be entered if the plaintiff prevailed on the merits of his case as it stands at the time of removal.'" <u>Id.</u> (quoting <u>Landmark Corp. v. Apogee Coal Co.</u>, 945 F.Supp. 932, 936-37 (S.D.W.Va. 1996)). A removing defendant must bring forth evidence in support of his claims that the amount in controversy is met, not simply make bare allegations. <u>Id.</u> (citations omitted). Ultimately, the Court should consider the entire record before it and, without abandoning its common sense, make an independent evaluation regarding the amount in controversy. <u>Id.</u> (citations omitted); <u>see also</u> <u>Scaralto</u>, 826 F.Supp.2d at 964.

**B. Analysis**

Here, the defendants note that the Whites have asserted nine separate claims, seeking economic damages, non-economic damages, and statutory damages, together with punitive damages and attorney's fees. According to the defendants, adding all these

items together proves that the threshold has been met. In further support, the defendants cite cases establishing maximum multipliers for non-economic damages in relationship to economic damages, as well as maximum multipliers for punitive damages in relation to compensatory damages.

Such bare assertions, however, are not evidence that the Whites are more likely than not to recover in excess of $75,000. As an initial matter, the law does not allow the Whites to recover duplicative damages, and the core claim in this case is for $2,393.62 in unapplied credit card payments. The defendants attempt to extrapolate the Whites' maximum possible award without providing actual evidence to support the likelihood of such a recovery.

Noting that the Whites could be awarded non-economic damages, at as much as a 6:1 ratio to economic damages, the defendants go on to cite cases in which courts have affirmed punitive damages awards at a 9:1 ratio to compensatory damages. Finally, they claim that attorney's fees in a similar case reached $25,000, and that a similar sum should be considered towards the threshold determination here. Such amounts, however, appear to be the defendants' attempt to show what the upward extreme of a case might

be worth, not evidence that this particular case is likely to reach the necessary threshold.

Both parties cite Savarese v. Allstate Ins. Co., et al., 5:06CV36 (attached at dkt. no. 8-1), a case in which Judge Stamp concluded that the removing defendants there had failed to provide sufficient evidence to satisfy the threshold. In Savarese, the plaintiffs sought $6,490.13 in compensatory damages,[1] as well as punitive damages and attorney's fees and costs. Judge Stamp held that the defendants had failed to establish by a preponderance of the evidence that attorney's fees and costs "would provide the jurisdictional amount in controversy." He found, as well, that "the mere likelihood of punitive damages, without more, does not give rise to federal jurisdiction." (citing his earlier opinion in Landmark Corp. v. Apogee Coal Co., 945 F.Supp. 932, 936-37 (S.D.W.Va. 1996)). He also found that punitive damages, as well as attorney's fees and costs, were simply too speculative at that point to provide the basis for jurisdiction. The Court agrees with this reasoning.

---

[1] In addition to violations of the WVCCPA, the claims there included bad faith, severe emotional distress, and failure to adequately supervise.

Similarly, the defendants here have failed to provide adequate evidence establishing that the amount in controversy has been met. Although they ask the Court to rely on maximum multipliers affirmed in other cases, they have not established that punitive damages or attorney's fees are more likely than not even to be awarded, and, if so, for what possible amounts. In summary, the defendants want the Court to assume an award for all economic and statutory damages available, a non-economic award that is a multiplier of that amount, a punitive damages award as high as nine times greater than the compensatory damages, and an award for attorney's fees as high as $25,000 based on a comparison to an unrelated case. Even accepting these speculative damages and multipliers, it remains questionable whether this case would meet the threshold.

Finally, it should be noted that the plaintiffs tendered a demand letter seeking $55,000 in damages. Courts give significant deference to a demand letter when evaluating the amount in controversy. See Scaralto v. Ferrell, 826 F.Supp.2d 960, 967 (S.D.W.Va. Nov. 29, 2011) ("The amount in controversy is not what the plaintiff, his lawyer, or some judge thinks a jury would award the plaintiff assuming he prevails on the merits. It is what the plaintiff claims to be entitled to or demands.") (citations

9

omitted). Here, the Court's judgment is informed by the fact that the Whites have valued their case at $55,000, a presumptively optimistic amount, as it is their first demand.

### III. CONCLUSION

For the reasons discussed, the Court concludes that the potential recoveries asserted by the defendants are too speculative at this point to justify jurisdiction; accordingly, it **GRANTS** the plaintiffs' motion and **REMANDS** this case to the Circuit Court of Hancock County, West Virginia.

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record and to the Circuit Court of Hancock County, West Virginia.  It further **DIRECTS** the Clerk to enter a separate judgment order, and to remove this case from the Court's active docket.

DATED: May 23, 2016

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE